Jimmy Ray BONDS, Appellant-Petitioner,

v.

Louie L. WAINWRIGHT, Secretary, Department of Offender Rehabilitation, Appellee-Respondent.

No. 75–3914.

United States Court of Appeals, Fifth Circuit.

Aug. 30, 1978.

318

Thomas A. Gribbin, Miami, Fla. (Court-appointed), for appellant-petitioner.

Robert L. Shevin, Atty. Gen., Miami, Fla., J. Robert Olian, Asst. Atty. Gen., Tallahassee, Fla., Joel D. Rosenblatt, Asst. Atty. Gen., Miami, Fla., for appellee-respondent.

Before BROWN, Chief Judge, and TUTTLE, THORNBERRY, COLEMAN, GOLD-

BERG, AINSWORTH, GODBOLD, MORGAN, CLARK, RONEY, GEE, TJOFLAT, HILL, FAY, RUBIN and VANCE, Circuit Judges.

CHARLES CLARK, Circuit Judge:

This case calls upon us to determine by what standard we should judge whether an attorney appointed to defend an indigent defendant at trial has rendered adequate assistance of counsel with respect to advising the defendant concerning his right to appeal. Jimmy Ray Bonds, a prisoner of the State of Florida, appeals the district court's denial of his petition for writ of habeas corpus under 28 U.S.C.A. § 2254. Bonds contends that at his 1953 trial the failure of his trial counsel adequately to advise him and consult with him about his right to appeal denied him his sixth amendment right to effective assistance of counsel at trial. A panel of this court, following *Bailey v. Ault*, 490 F.2d 71 (5th Cir. 1974), applied present-day standards to gauge trial counsel's actions and reversed the district court. On rehearing *en banc*, we vacate the decision of the panel, overrule *Bailey*, adopt the Fourth Circuit's reasoning in *Shiflett v. Virginia*, 447 F.2d 50 (4th Cir. 1971) (*en banc*), *cert. denied*, 405 U.S. 994, 92 S.Ct. 1267, 31 L.Ed.2d 462 (1972), and hold that under the standards which applied at the time of Bonds' trial, he was not denied adequate assistance of counsel.

In 1953, a jury in Florida state court found Bonds, then sixteen years old, guilty of rape and the court sentenced him to thirty years in prison. He did not appeal. In 1974, after exhausting his state remedies, Bonds petitioned for habeas relief in United States district court. The district court denied relief. On appeal, Bonds challenged only that portion of the district court's opinion denying his contention that his trial counsel failed to render him constitutionally effective assistance in connection with the decision whether or not to pursue a direct appeal of his conviction.[1]

1. In the case at bar, we deal with the obligations that the sixth amendment imposes upon trial counsel with respect to notifying the defendant concerning a right to appeal. *Lumpkin*

The panel's opinion in the case at bar discussed the district court's findings of fact at length and upheld them as not clearly erroneous. We agree and differ with the panel only as to the legal conclusions to be drawn from these findings. In brief, the district court found that in Bonds' presence his attorneys discussed and considered the possibility of appealing, that Bonds neither pressed for an appeal nor affirmatively consented to forego an appeal, and that Bonds explicitly left the decision whether or not to appeal to his attorneys.

Under *Bailey, Lumpkin v. Smith*, 439 F.2d 1084 (5th Cir. 1971), supplies the standards by which to judge the effectiveness of appointed counsel even where trial took place before the *Lumpkin* decision itself. Therefore, the panel in the case at bar, bound by *Bailey*, held that Bonds would be entitled to habeas relief for failure of his court-appointed attorney expressly to advise him of specified elements of his right to appeal: existence of the right, the procedure and time limits involved, and of his right to appointed counsel on appeal. 439 F.2d at 1085. Now, *en banc*, we overrule *Bailey* and hold that *Lumpkin* does not apply retroactively.

*Bailey* viewed *Lumpkin* as a restatement of law already existing in this circuit rather than as a decision embodying a new standard. *Lumpkin* held:

> an indigent accused is denied effective assistance of counsel at a critical stage of the criminal process when his court-appointed attorney fails to advise him of his right to appeal, the procedure and time limits involved, and of his right to appointed counsel on appeal.

states those elements of that duty which would apply today. The right to appointed counsel at trial and on appeal applies retroactively. *See, e. g., Smith v. Crouse*, 378 U.S. 584, 84 S.Ct. 1929, ₁2 L.Ed.2d 1039 (1964); *Pickelsimer v. Wainwright*, 375 U.S. 2, 84 S.Ct. 80, 11 L.Ed.2d 41 (1963). We do not deal with retroactivity of that right, a question now settled by the Supreme Court; rather, we deal with the retroactivity of elements of the standard by which we judge whether appointed trial counsel rendered constitutionally effective assistance. Similarly, we are not concerned here with the standards by which to determine the effectiveness of

Relying upon *Edge v. Wainwright*, 347 F.2d 190 (5th Cir. 1965), *cert. denied*, 385 U.S. 953, 87 S.Ct. 335, 17 L.Ed.2d 231 (1966), *Bailey* held "there is no valid issue of retroactivity of the rule stated in *Edge, Byrd, Lumpkin*,[2] and numerous other cases of this Court and the Supreme Court." 490 F.2d at 71.

The panel opinion in *Bonds* stated unequivocally that *Bailey* held *Lumpkin* applied retroactively. The matter is not so plain to us. *Bailey* may be read as holding *Lumpkin* established no new principle of law. A reexamination of the cases relied upon in *Lumpkin* and *Bailey* shows that this view is incorrect. If *Bailey* is to be interpreted as holding that *Lumpkin*, even if new law, should apply retroactively, it also lacks substance because this circuit has never subjected the *Lumpkin* rule to the analysis provided in *Stovall v. Denno*, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967).

*Lumpkin* itself spawned the problem we now face in *Bailey* by introducing its holding with the phrase "[i]t is well established." In specifying what an appointed attorney must tell a defendant about his right to appeal in order to provide minimum effective assistance under the sixth amendment, *Lumpkin* cited our decisions in *Thomas v. Beto*, 423 F.2d 642 (5th Cir. 1970), and *Wainwright v. Simpson*, 360 F.2d 307 (5th Cir. 1966). Unlike *Lumpkin*, neither *Thomas* nor *Simpson* places upon appointed counsel the affirmative obligation to impart to a defendant specified information about his right to appeal beyond the fact that a right to appeal exists. *Thomas*, which relied on *Simpson*, held that a defendant did not re-

counsel appointed for the purpose of appeal. *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), supplies those standards. Rather, in the case at bar, we deal only with that advice trial counsel must give a defendant concerning a right to appeal in order to render effective assistance as trial counsel.

**2.** *Edge v. Wainwright*, 347 U.S. 190 (5th Cir. 1965), *cert. denied*, 385 U.S. 953, 87 S.Ct. 335, 17 L.Ed.2d 231 (1966); *Byrd v. Smith*, 407 U.S. 363 (5th Cir. 1969); *Lumpkin v. Smith*, 439 F.2d 1084 (5th Cir. 1971).

ceive adequate assistance of counsel because his attorney "had no authority, without consulting with or obtaining the consent of his client, deliberately to forego [petitioner's] right * * * to appeal." 423 F.2d at 643, *quoting Wainwright v. Simpson, supra,* 360 F.2d at 309. Under *Thomas* and *Simpson,* an appointed attorney cannot fail to advise his client that he has a right to appeal and then, by unilateral action, deprive his client of the opportunity to mount a direct challenge to his conviction. Although *Thomas* and *Simpson* recognize that appointed trial counsel has an obligation to bring to his client's attention that a right to appeal exists, neither case in any sense requires the remaining parts of the *Lumpkin* litany of counsel duties.

*Bailey* implied that the rule in *Lumpkin* also appeared in this circuit's earlier decisions in *Edge* and in *Byrd v. Smith,* 407 F.2d 363 (5th Cir. 1969). These cases too fail to show that in this circuit the full *Lumpkin* rule predated the *Lumpkin* decision; rather, they support the contrary conclusion. In *Edge,* the petitioner alleged that his counsel refused to prosecute an appeal because he saw no prospect of remuneration and that petitioner informed the trial judge both of his desire to appeal and of his need for assistance. The panel remanded the case to the district court with these directions:

> If Edge can prove that he was deprived of his right to appeal and to have the assistance of counsel on appeal due to his indigency and that the trial judge, or some other responsible official, knew of his plight and failed to aid him, he will have shown enough to entitle him to a writ of habeas corpus.

347 F.2d at 192. The standard in *Edge* differs considerably from that in *Lumpkin,* which requires specific affirmative advice by counsel to ensure that the defendant knows every significant factor relevant to his appellate rights.

Neither does *Byrd* set a specific standard for the elements of advice that trial counsel must give a defendant to discharge the minimum obligation of effective assistance

under the sixth amendment. In *Byrd,* the defendant stated to his counsel that he wanted to appeal and counsel told the defendant and his family that an appeal would be taken. No appeal was taken. Byrd's request to appeal triggered the requirements of *Anders v. California,* 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), that specify the components of the obligation of appointed counsel on appeal. *Byrd* did not lay down specific requirements for the information that trial counsel must give to a defendant prior to a decision on whether to appeal in order to meet the minimum obligations to a client. Rather, *Byrd* dealt with a default by appellate counsel which took place after the defendant made a decision to appeal and expressed his decision to counsel.

An examination of the decisions of this circuit shows that *Lumpkin* adopted standards for effective assistance of counsel not previously applied in this circuit. Therefore, we must confront the question that *Bailey* did not reach: whether, under the analysis of *Stovall,* the rule in *Lumpkin* applies retroactively. Upon reconsideration *en banc,* we overrule *Bailey* and adopt the reasoning of the Fourth Circuit in *Shiflett v. Virginia,* 447 F.2d 50 (4th Cir. 1971) (*en banc*), *cert. denied,* 405 U.S. 994, 92 S.Ct. 1267, 31 L.Ed.2d 462 (1972), which refused retroactive application of a set of requirements similar to our *Lumpkin* rule which had been adopted in *Nelson v. Peyton,* 415 F.2d 1154 (4th Cir. 1969), *cert. denied,* 397 U.S. 1007, 90 S.Ct. 1235, 25 L.Ed.2d 420 (1970).

Having determined, under the reasoning in *Shiflett,* that *Lumpkin* does not apply retroactively and, hence, that Bonds cannot rely upon a failure to perform duties first specified in that case, we now consider whether Bonds' counsel rendered constitutionally effective assistance with respect to Bonds' appellate rights according to the norms of representation prevailing at the time of counsel's actions. *Cf. Burston v. Caldwell,* 506 F.2d 24 (5th Cir.), *cert. denied,* 421 U.S. 990, 95 S.Ct. 1995, 44 L.Ed.2d 480 (1975). At the time of Bonds' 1953 trial,

the prevailing standards for adequate representation by trial counsel in this circuit accorded substantially with those identified in *Shiflett* as prevailing in the Fourth Circuit prior to its decision in *Nelson*:

> A lawyer retained or appointed to represent a defendant ordinarily was prepared to advise his client to appeal, and to assist him on appeal, if he believed there was a reasonable prospect of success. In the absence of such a belief, he considered his duty done at the conclusion of a trial unless he was informed by his client, or otherwise had reason to believe, that he wished to appeal nonetheless. Our former cases recognized and upheld this practice. Repeatedly we declined to attach constitutional significance to an attorney's failure to take steps leading to appellate review where the defendant had made no contemporaneous expression of dissatisfaction with the trial's result and had failed to indicate any affirmative desire for an appeal.

*Shiflett v. Virginia, supra,* 447 F.2d at 53. Our pre-*Lumpkin* cases differ somewhat from this description by the recognition in *Thomas* and *Simpson* that trial counsel has a duty to advise his client that a right to appeal exists. We need not reconstruct the precise standards applying at the time of Bonds' 1953 trial, however, because we determine that without *Lumpkin*, Bonds' contentions fail.

Under the facts as found by the district court, it is implicit that Bonds' attorneys made his right to appeal known to him because Bonds left to counsel the decision whether to prosecute an appeal. Under then-prevailing Florida law, a court could have sentenced Bonds to death in a new trial. Given this sobering consequence, counsel's decision to forego appeal does not suggest they were unworthy of the trust Bonds imposed upon them.

The decisions prior to *Lumpkin* which are most favorable to Bonds, *Thomas* and *Simpson*, establish that rendering adequate assistance at trial requires that appointed trial counsel advise his client that a right to appeal exists and that counsel not act unilaterally to forego a client's right to appeal without consent or consultation. Neither of these bases for relief apply here. The additional elements of advice required by *Lumpkin*, which affect a range of cases far broader than those in which the evil aimed at has in fact occurred, do not apply retroactively to render a trial attorney's performance constitutionally ineffective when trial counsel's advice about the right to appeal met the standard which applied prior to *Lumpkin*.

After reviewing the district court's findings under standards for effectiveness which applied prior to *Lumpkin*, we conclude that Bonds received adequate assistance of counsel with regard to his right to appeal his state court conviction. Accordingly, the decision of the panel is VACATED and the judgment of the district court is

AFFIRMED.

TUTTLE, Circuit Judge, with whom GOLDBERG and GODBOLD, Circuit Judges, join, dissenting.

With deference I dissent, because I am of the view that at the time of Bonds' 1953 trial, the prevailing standard for adequate representation by trial counsel was that such counsel had a duty to advise his client that a right to appeal exists. As I read the majority opinion, I find it in agreement on this point. It says: "Our pre-*Lumpkin* cases differ somewhat from [the *Shiflett* rule] by the recognition in *Thomas* and *Simpson* that trial counsel has a duty to advise his client that a right to appeal exists."

The findings of the trial court in this case are not satisfactory. They implied conclusions first one way and then the other. To me, however, the controlling fact in the trial court's opinion is the twice-expressed explicit view that Bonds "was not familiar with his appellate rights."[1] This, I think,

---

1. These two statements are contained in the following excerpt from the trial court's opinion:

Shortly after the conviction, Klein and Durant had a conversation in the presence of

places this case squarely in the posture of the *Thomas* and *Simpson* cases which the majority describes as providing "that trial counsel has a duty to advise his client that a right to appeal exists."

I discuss first the theory that *Lumpkin* established no new principle of law, in which event, of course, the rule of *Lumpkin* was in effect at the time of Bonds' trial. I believe that the explicit requirements announced in *Lumpkin* that counsel "advise him of his right to appeal, the procedure and the time limits involved and of his right to appointed counsel on appeal" are all comprehended within the existing rule that counsel has a "duty to advise his client that a right to appeal exists." When the *Lumpkin* court stated that the explicit requirements were "well established," I believe it intended to express the view that the pre-*Lumpkin* requirements were not changed by any newly-announced rule. I believe this because I think it utterly fanciful to conclude that duty of counsel to inform his client of his right to appeal would have any meaning at all in a constitutional sense unless it included a requirement that contained substantially the same elements now

required under *Lumpkin*. I, therefore, think *Bailey* was correctly decided and it properly articulates the law of this Circuit at the time of Bonds' trial.

On the other hand, if *Bailey* is to be construed, as I had originally thought, as giving retroactivity to the *Lumpkin* standards, then I fully agree with the dissenting opinion of Judges Winter and Sobeloff in *Shiflett* in their view that of the standards outlined in *Williams v. United States*, 401 U.S. 646, 91 S.Ct. 1148, 28 L.Ed.2d 388 (1973) to enable a court to determine whether to give retroactive effect to new legal principles "the purpose to be served by the new standards is the most important." I fully agree with the statement in that dissenting opinion that: "I would have no question but that an appeal goes to the very heart of the truth-finding process." This then brings into play that part of the *Williams* opinion in which the court said:

[w]here the major purpose of new constitutional doctrine is to overcome an aspect of the criminal trial which substantially impairs its truth-finding function and so raises serious questions about the accura-

the petitioner regarding "errors" which might warrant a new trial. At the time, *Bonds was not familiar with his appellate rights,* but it is clear that the lawyers, in Bonds' presence, did give consideration to the prospects of a successful appeal. The trial ended on September 2nd, 1953. On September 4th, 1953, Durant and Klein filed a written motion for an order appointing them as attorneys for Bonds and for the allowance of attorneys' fees. The motion recited that the defendant was indigent and could not pay a reasonable fee for representation "in the above styled cause"; that the attorneys had been paid no fee; and that "said attorneys have completed the duties of defending the said Jimmy Ray Bonds in this Court." The motion prayed "for an order appointing them as attorneys for an indigent defendant and the allowance to them for a reasonable fee for their services in the above styled cause." At the time of the filing of the motion an affidavit of insolvency was filed. That affidavit reads as follows:

"Before me, the undersigned authority, personally appeared Jimmie Raye [sic] Bonds, who being by me first duly sworn, upon his oath deposes and says:

That he is utterly unable to pay the costs of this cause or attorneys fees herein either in

whole or in part; that he has no property or other means of payment either in his possession or under his control and that he has not divested himself from his property for the purpose of receiving benefit from this oath, and is also utterly unable to enter into any bond which might be required to secure the payment of costs in the event he should elect to prosecute an appeal in the above entitled cause.

Further affiant sayeth not."

The affidavit was signed by Bonds on the 4th day of September, 1953. Thus, it appears that the petitioner had court-appointed counsel available to him for the purposes of appeal. Although Bonds signed the affidavit, *he probably did not read it carefully and he signed it so that his lawyers "could get paid."* Nevertheless, there is no question but that Bonds had available to him appellate counsel and that there was at least some discussion relating to the possibility of an appeal. *Not being familiar with his appellate rights,* Bonds did not request his court-appointed counsel to take an appeal and no appeal was taken. (Emphasis added.)

This statement clearly implied that Bonds' unfamiliarity with his appellate rights was the reason why he did not request his court-appointed counsel to take an appeal.

cy of guilty verdicts in past trials, the new rule has been given complete retroactive effect. *Neither good-faith reliance by state or federal authorities on prior constitutional law or accepted practice, nor severe impact on the administration of justice has sufficed to require prospective application in these circumstances.* (Emphasis supplied; footnote omitted.) *Williams v. United States,* 401 U.S. at 646, 91 S.Ct. 1148, 23 L.Ed.2d 388. See also, *Desist v. United States,* 394 U.S. at 249, 89 S.Ct. 1030, 22 L.Ed.2d 248.

447 F.2d at 59.

Finally, I must say that the discussion of the requirements of *Lumpkin* and *Bailey* are irrelevant to the issue here before the Court. All concede that counsel had the duty at the time of Bonds' trial to acquaint him of his right of appeal. The trial court determined that Bonds "was not familiar with his appellate rights." I don't think we have here any question as to whether Bonds was entitled to have his lawyer go through the formulation announced in *Lumpkin,* telling him about the procedure, the time limits and of his right to appointed counsel, because we have a determination by the trial court that there was a failure to afford Bonds the information about his appellate rights which the case law clearly required at the time of his trial.

I would reverse the judgment of the trial court.

ALVIN B. RUBIN, Circuit Judge, dissenting:

Despite the study and effort the members of the court have lavished on this case, I must respectfully dissent because the material with which we have worked was not in shape for our labors. The findings of the trial court are ambiguous. Both the majority and other dissenters must parse sentences and plumb words to draw meanings, and the exercise in hermeneutics then leads them to different factual conclusions. I cannot agree with either exegesis for I cannot tell whether the trial court found: (a) the lawyers, who appear to have done all that counsel could up to the time the deci-

sion to appeal or not to appeal was faced, merely discussed the question of appeal in Bonds's presence and themselves reached the decision not to appeal; (b) the lawyers informed Bonds that he had a right to appeal and he, sixteen years old and grateful for the aid of his ex-teacher and the more experienced lawyer who had joined in his defense, said, in effect, "I don't know enough to decide this question, which may mean my life or death; I want you to decide what's best for me;" (c) Bonds did (or did not) know that he had a right to appointed counsel on appeal.

For this reason, the panel should have remanded the case to the trial judge to make explicit findings, or to say that he could not, and, if so, why he could not. (*Compare* Rules 7 and 8, Rules Governing Section 2254 Cases, which became effective February 1, 1977. This petition was, however, filed December 26, 1974.) Having granted a rehearing en banc and having learned what we now know, despite the effort that we have expended, we should avoid the construction of monumental principles on a bed of factual quicksand, but should merely vacate the panel decision and remand.

Unless the facts are now no longer ascertainable, this course would likely resolve the matter. For, if the trial court found (as the record implies) that Bonds knew he had a right to appointed counsel, and he delegated to competent counsel the power of decision, I do not believe that, after a quarter century delay, Bonds may exact retroactivity in punctilious detail from the *Lumpkin* statement that counsel must advise the defendant of the procedure and time limits that would be involved in an appeal. What purpose, under those facts, would such advice have served?

If, on the other hand, Bonds was treated as a passive spectator, and counsel, with motives however noble, arrogated the decision of his destiny, they did not comply with the requirements of *Thomas v. Beto,* 5 Cir. 1970, 423 F.2d 642, and *Wainwright v. Simpson,* 5 Cir. 1966, 360 F.2d 307, both of which the majority would consider an accu-

**324**

rate delineation of counsel's duty at the time Bonds was convicted.

It is difficult to see how we could rest decision on *Shiflett v. Virginia*, 4 Cir. 1971, 447 F.2d 50. The Fourth Circuit opinion stresses the danger of "a flood of belated appeals." 447 F.2d at 57. *Bailey v. Ault*, 5 Cir. 1974, 490 F.2d 71, was decided four years ago, and we have since confronted the issue only in this case.[1] The judicial weather forecast was apparently in error.

Bonds has been confined for 25 years; his fate should not be determined in a factual blur. The state will not suffer unduly from remand because Bonds remains confined. Remand is the long way around, but it is the short and the only sure way to a just result.

---

1. In *Haggard v. State of Alabama*, 5 Cir. 1977, 550 F.2d 1019, 1023, we indicated that an indigent convicted in 1968 had a right to be told of his opportunity to appeal, and cited *Lumpkin*, but *Thomas* and *Simpson* required this much. *See also Dixon v. Caldwell*, 5 Cir. 1972, 471 F.2d 767 (failure to acknowledge petitioner's request for an appeal on his behalf).